PRICE, Judge.
This is an appeal from a judgment rejecting plaintiff’s claim for workmen’s compensation benefits.
Phillip Carl Prudhomme brought suit against Camus Electric Company, Inc., and its compensation insurer, Great American Insurance Corporation, alleging he had become totally and permanently disabled as a result of an accident happening on or about March 31, 1969, while in the employ of Camus. In addition to weekly benefits provided by the Louisiana Workmen’s Compensation Statute, plaintiff seeks medical expenses, penalties and attorney’s fees for an alleged arbitrary and capricious refusal to pay benefits by defendants.
The facts giving rise to this claim are substantially as follows:
Prudhomme was working as an electrician for Camus on a job at the Western Electric Plant in Shreveport. The work being performed on the date of March 31st required Prudhomme and his fellow electricians to weld 20 foot sections of 4 inch angle iron. While engaged in stacking a quantity of this material weighing between 70 and 100 pounds per section, Prudhomme stopped a moment to drink water from a water fountain. When he bent over the fountain he contends he sneezed and felt a sudden severe pain in his back, forcing him to lie or sit on the floor for a period of approximately ten minutes. This incident was reported by Prudhomme to his supervisor. According to the testimony of the claimant, he was stiff and sore in his low back region for several days but he continued to work, and after three or four days he felt he had recovered.
On April 12, 1969, approximately two weeks later, Prudhomme had an automobile accident not related to his employment. Some eight hours after the accident he began to have back pain again. On May 10, 1969, he consulted Dr. T. M. Oxford, an orthopedist in Shreveport. In the history given Dr. Oxford, Prudhomme disclosed the incident at the water cooler on March 31st and the automobile collision on April 12th. Dr. Oxford on the first visit diagnosed his condition as muscle strain in the low back. On the second visit on July 28, 1969, plaintiff complained of some numbness in his left big toe with pain radiating down his left leg. Prudhomme continued under the treatment of Dr. Oxford until *366 January of 1970. In February, 1970, he consulted Dr. Ray King, an orthopedist, who performed a myelogram which was inconclusive as to the cause of his physical condition. In the history given to Dr. King, Prudhomme mentioned the sudden onset of pain occurring at the water fountain while employed by Camus and the recurrence of pain after his automobile collision. In September, 1970, Dr. King operated on Prud-homme and found a rupture of the inter-vertebral disc of the D-4 and 1^5 region of his low back. These were removed and a spinal fusion performed.
Both Drs. King and Oxford were of the opinion Prudhomme was totally and permanently disabled to perform the duties of an electrician at the time of trial.
Defendants, in answer to plaintiff’s petition, deny there is any causal connection between the incident described by Prud-homme resulting in temporary pain on March 31, 1969, and his present disability.
The trial judge, in reasons for judgment, considered Prudhomme’s testimony as indicating he had completely recovered from any effects of the incident on March 31st, when he had the automobile collision. He was further of the opinion that considering the testimony of Dr. King that the collision of April 12th caused the rupture of the discs, plaintiff had not borne the burden of proving his demands.
Appellant contends the evidence is sufficient to establish a causal relationship between the accident suffered by him on March 31, 1969, and his disability resulting from the herniated discs.
The resolution of the issues in this case depends largely on the credibility of the plaintiff’s testimony. In arriving at their conclusion on the cause of the herniation of the two discs in plaintiff’s back, the treating physicians primarily relied on information given them by plaintiff depicting the two incidents which caused him to begin to suffer back pain and the symptoms following each incident.
Appellees place considerable stress on the failure of either Dr. King or Dr. Oxford to have made a notation in their recordation of the history given by Prudhomme that he continued to have any symptoms of injury after a period of three or four days subsequent to the March 31st incident. Although neither doctor had a record of a complaint by Prudhomme that he continued to have a tingling sensation beginning in his left hip and extending down into the calf of his left leg, Prudhomme testified he believed he gave the information to both physicians. Prudhomme testified on trial of the case that he suffered severe pain following the March 31st accident for a period of about three days, and after this it diminished. He contends he continued to have a tingling or burning sensation, as previously described, intermittently on through the date of the automobile collision.
Neither Dr. King nor Dr. Oxford could testify that Prudhomme did not mention this symptom, but they had no recollection of it, nor did it appear in their notes.
From our examination of the testimony of plaintiff in this case, we are impressed with the truthfulness of his testimony. He has been forthright with his answers on matters both beneficial and detrimental to his own cause.
The trial judge did not find it necessary in his view of the case to pass on the credibility of Prudhomme’s testimony. Therefore, we are of the opinion this court may properly weigh the truthfulness of the testimony from a reading of the record. Should Prudhomme’s testimony be given full weight, then we are of the opinion the evidence does show the March 31st accident was at least a contributing cause of the present disability.
Although Dr. King testified he was of the opinion the April 12th collision was the cause of the disc herniation, he admitted if plaintiff had continued to have the tingling sensation radiating from his hip into his leg, this would be a symptom commensurate *367 with either disc involvement or muscle strain.
Dr. Oxford testified there is no way to determine with any degree of certainty when the herniation occurs. In his opinion, a partial herniation could have occurred in the first accident on the job and have become more aggravated by the automobile collision.
As we understand the conclusion of Dr. King that the disc herniation resulted solely from the automobile collision, it is based on the assumption that Prudhomme had become completely asymptomatic from the previous accident of March 31st when he was involved in the second accident. Additionally, we have the testimony of Dr. Oxford stating that even though he had become asymptomatic prior to the accident, the herniation could have resulted partially, or altogether, from the March 31st accident. Therefore, if Prudhomme’s testimony refutes the assumption he had become completely asymptomatic prior to the collision, we believe the evidence to preponderate in favor of the plaintiff.
The record discloses Prudhomme filed a tort action against the driver of the other vehicle in the collision occurring on April 12, 1969, seeking damages for an alleged ruptured disc caused by the collision. Also the evidence discloses that Prudhomme collected benefits on a group health and accident insurance policy for medical expenses and a period of disability resulting from the disc surgery. The policy excludes coverage for any disability or expenses connected with injury received while employed for which workmen’s compensation benefits are payable. In the application for the benefits, Prudhomme, in response to questions contained therein, stated the injury did not occur at his employment.
Appellees argue these claims made by Prudhomme are inconsistent with his contention in this action that the injury alleged while working for Camus was a cause of his disability.
We have noted that in the application made for the insurance benefits, in answer to a question asking the applicant to describe how the injury happened, Prudhom-me responded as follows:
“Q. All right, then there is the question, how did it happen. You said previous injury on job, later car wreck, surgery resulting car wreck at 1-20 and Lakeshore. Where did it happen? Car wreck at 1-20 and Lake-shore? You filled all this in?
“A. Yes, sir.” (Emphasis supplied.)
In the same form Prudhomme also discloses that he had filed a claim for workmen’s compensation benefits connected with this injury.
It may well be that Prudhomme could have a claim in tort arising out of the collision causing an aggravation or contributing to the same injury for which he seeks compensation benefits. If both are shown to have contributed to the disability, then the tort-feasor and the employer may be liable. The tort action was compromised prior to trial and no testimony was therefore ever taken in connection with that matter.
At the time Prudhomme made application for disability benefits under the policy here-inabove described, it is obvious he was not certain who was legally responsible to him for benefits or damages. He made a full disclosure of all incidents and pending actions in the application. Therefore, we do not attach much significance to this evidence.
As we have previously observed herein, we are impressed with the truthfulness of the testimony of this claimant. He testified he suffered severe pain coincidental with the bending movement on March 31st immediately after strenuous physical labor in rather severe heat. We are willing to accept his testimony that he continued to suffer the intermittent burning or tingling sensation in his hip, radiating into the left leg, which could be indicative of a disc involvement.
*368 We do not see fit to penalize a conscientious employee who did not seek medical treatment immediately and who unfortunately was involved in another incident soon thereafter which renders it more difficult to pinpoint the cause of his subsequent disability. We believe Prudhomme has satisfied the jurisprudential rule requiring a compensation claimant to prove the occurrence of an industrial accident and its causal relationship with his disability by a preponderance of the evidence and to a reasonable certainty.
There is no basis for an award of penalties and attorney’s fees in this action. The evidence does not show the refusal to pay was arbitrary or capricious. To the contrary, the medical reports in possession of defendants gave them every right to demand a judicial determination of the claimant’s rights.
The evidence reflects Prudhomme was earning in excess of $200.00 per week and is therefore entitled to the maximum benefit of $45.00 per week. He ceased working and drawing regular wages on or around September 1, 1970, and this should be the date from which compensation benefits should accrue.
The evidence contains copies of medical bills from S'chumpert Memorial Hospital and Snell’s Limbs and Braces. It is indicated that defendant, Great American, paid Dr. Snell’s statement in connection with the treatment rendered by Dr. Oxford. However, the evidence is inconclusive as to whether the remaining medical bills have been paid by claimant or are outstanding debts at this time. We therefore feel the right should be reserved to plaintiff to recover medical expenses upon submitting proper proof therefor, as well as future medical expenses up to the maximum allowed by law.
Accordingly, the judgment appealed from is hereby reversed and it is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Phillip Carl Prud-homme, and against defendants, Camus Electric Company, Inc., and Great American Insurance Corporation, in solido, for compensation benefits in the sum of $45.00 per week for the period of his disability, not exceeding 400 weeks, beginning September 1, 1970, with 5% per annum interest on each weekly installment after maturity until paid, and for all costs, including the expert witness fees of Dr. King and Dr. Oxford, which are hereby fixed at $75.00 each.
Plaintiff’s right to recover medical expenses, both past and future, is reserved.